TARRANT COUNTY HOSPITAL
DISTRICT, Appellant,

v.

Elzie JONES as Next Friend for Joseph
Jones, a Minor, et al., Appellees.

No. 2–83–081–CV.

Court of Appeals of Texas,
Fort Worth.

Jan. 12, 1984.

Tim Curry, Dist. Atty., and E. Earl Harcrow, Asst. Dist. Atty., Fort Worth, for appellant.

Bob Greenspan, Fort Worth, for appellees.

Before FENDER, C.J., and JORDAN and BURDOCK, JJ.

## OPINION

FENDER, Chief Justice.

This action originated from an automobile accident between Louella Gardner and Michael McEachern, which occurred when Gardner made a left turn in front of McEachern's vehicle. As a result of the collision, Gardner was taken to John Peter Smith Hospital, which is operated by Appellant Tarrant County Hospital District [hereinafter Hospital District]. Gardner was never conscious during the time of her hospitalization, and she died approximately one month later from injuries sustained in the accident. Several days after Gardner's death the Hospital District properly filed and perfected a lien against her estate in accordance with the hospital lien statute, TEX.REV.CIV.STAT.ANN. art. 5506a (Vernon 1958 & Supp.1982–1983). This lien

was in the amount of $31,752.13, which represented the value of medical services rendered to Gardner by the Hospital District.

Gardner was survived by her three minor children, appellees Judy, Joseph and David Jones. Gardner's ex-husband, Elzie Jones, (father of the children) entered into a contract with appellee attorney Bob Greenspan to represent the children in an action for damages against Michael McEachern and his insurance carrier, State Farm Insurance Company [hereinafter State Farm]. The contract assigned a one-third interest in the children's claim against McEachern and State Farm to Greenspan, and further provided for an attorney's lien in favor of Greenspan for any money he received either from McEachern or State Farm. Upon reaching the age of eighteen, David Jones was appointed administrator of the estate of Louella Gardner, and in that capacity he entered into an additional contract with Greenspan for legal services. That action was authorized by Tarrant County Probate Court No. 2, which also approved a one-third contingent fee of proceeds received by the estate as a result of Greenspan's services.

The policy issued by State Farm covered McEachern's car in the amount of $25,000 for personal injury and $4,000 for property damage. State Farm initially denied all of the Joneses' claims on the ground that McEachern was not negligent and that the accident was caused by Louella Gardner. The Joneses then sued McEachern for wrongful death damages pursuant to the Death Statute, TEX.REV.CIV.STAT.ANN. art. 4671 et seq. (Vernon 1952 & Supp.1982–1983), and for Gardner's personal injuries pursuant to the Survival Statute, TEX. REV.CIV.STAT.ANN. art. 5525 (Vernon 1958). The Hospital District intervened in the suit, claiming that it was entitled to the full amount of its lien in order to satisfy the bill for medical expenses rendered to Louella Gardner. R.D. Ryno Imports, the holder of the purchase money note on Gardner's car, also intervened alleging that it was entitled to receive $1,823.14, the sum owed

by Gardner on the note at the time of the accident. Without including the Hospital District in the negotiations, Greenspan convinced State Farm to pay the policy limit of $25,000 to the Joneses in settlement of the suit. State Farm additionally agreed to pay R.D. Ryno Imports the sum of $1,995, which represents the cash market value of the automobile immediately prior to the collision.

The Hospital District then filed an amended plea in intervention in which they requested the court to declare the settlement between the Joneses, R.D. Ryno Imports, and State Farm null and void and to render judgment in favor of the Hospital District. All parties, including the Hospital District, then negotiated an agreement which provided that State Farm would pay the entire amount of the settlement, $26,995, into the registry of the court, and that such payment would extinguish the liability of McEachern and State Farm. The parties further agreed to have the court determine the proper distribution of the fund.

After a short hearing, the trial court determined that each of the Jones children was entitled to $4,000 wrongful death damages under the Death Statute for the loss of Louella Gardner. It further determined that R.D. Ryno Imports was entitled to $1,995, the cash market value of Gardner's car. The court then considered the nature of Greenspan's interest in the money and found that he had a valid contract, assignment, and lien on any proceeds which he recovered. It held that Greenspan's lien was a collecting lien superior to the Hospital District's lien, and thus awarded him one-third of $25,000, or $8,333.33. Finally, the court awarded the Hospital District $4,666.67, specifically stating that this was not because of its lien, but merely because this amount was a surplusage left over after the other claims had been satisfied. The Hospital now appeals the judgment, claiming that because of its lien it is entitled to the entire settlement amount of $26,995.

We affirm the judgment of the trial court in part and reverse in part.

In its first and second points of error, the Hospital District argues that the trial court erred in awarding $12,000 to the Jones children for the wrongful death of Louella Gardner, rather than using the money to satisfy the hospital lien. The Hospital District contends that pursuant to the Hospital Lien Statute, article 5506a, its duly perfected lien attaches to the wrongful death award made to the children and is superior to the children's interest in the funds. The Jones children, however, argue that article 5506a does not permit a hospital lien to attach to an award of damages for wrongful death. We agree with the contention of the Jones children.

Since there are no cases which interpret the application of article 5506a to wrongful death actions, we must look directly to the statute in order to determine the type of award to which a hospital lien may attach. Section one of article 5506a provides:

> Every . . . institution maintaining a hospital or clinic . . . shall be entitled to a lien upon any and all rights of action . . . of any persons admitted to any hospital and receiving treatment, care and maintenance therein, *on account of any personal injuries received* in any accident as a result of the alleged negligence of any other person . . . which any such injured person may or shall have, assert, or maintain against any such other person . . . *for damages on account of such injuries,* for the amount of the charges of such hospital or clinic for such treatment, care and maintenance as may have been given to the injured persons. [Emphasis added].

Section two provides:

> The lien of any such hospital shall also attach to any verdict, report, decision, decree, award, judgment, or final order made or rendered in any action or proceeding . . . in any suit . . . brought by such injured persons, by any person entitled thereto in case of death of such injured person . . . for the recovery of dam-

ages or compensation on *account of injuries received in any such accident . . .* as well as the proceeds of any settlement thereof, or the settlement of any such claim . . . [Emphasis added].

 These sections make clear that a hospital lien for services rendered may attach to a right of action, or judgment or award if one has been rendered, only in cases where suit has been brought for *personal injury damages.* Specifically, section one applies only to a situation in which a hospital renders treatment to a patient for injuries sustained in an accident which allegedly resulted from the negligence of a third party, and the patient later sues the third party to recover damages for the injuries. In such a case, section one grants a lien to the hospital on the patient's right of action against the third party. Section two applies to the same situation as section one, but section two allows the hospital lien to attach to any final judgment or award which the patient receives as a result of his suit. Section two also permits the attachment of a lien to a judgment or award in a suit brought by a person entitled to sue in case of death of the injured patient. In order for the lien to attach, however, the suit must still be an action for damages for injuries sustained by the patient as a result of the accident.

 It is well settled that there are two separate and distinct causes of action which may arise when injuries wrongfully inflicted result in death. *Landers v. B.F. Goodrich Company,* 369 S.W.2d 33 (Tex. 1963). One is a common law action to recover damages for the personal injuries which resulted in the decedent's death. *Landers, supra,* at 35. Pursuant to the Survival Statute, this cause of action may be asserted on behalf of the decedent's estate. *Mitchell v. Akers,* 401 S.W.2d 907 (Tex.Civ.App.—Dallas 1966, writ ref'd n.r. e.). The specific types of damages which may be recovered under the statute include consciousness of impending death and physical pain and suffering, *City of Austin v.*

*Selter,* 415 S.W.2d 489 (Tex.Civ.App.—Austin 1967, writ ref'd n.r.e.), and medical and funeral expenses, *Landers, supra* at 35.

 The other cause of action is a suit for wrongful death, which is a right of action conferred by the Death Statute upon the surviving husband, wife, child, and parents of the decedent. *Landers, supra* at 35. The measure of recovery for wrongful death has nothing to do with the injuries sustained by the decedent, but is rather the monetary value of the benefit that the plaintiff reasonably expected to receive from the decedent had he not been killed. *Halliburton Company v. Olivas,* 517 S.W.2d 349 (Tex.Civ.App.—El Paso 1974, no writ). Since article 5506a permits hospital liens to attach only in cases where a recovery for personal injury is sought, it clearly does not allow such a lien to attach to a judgment or award for wrongful death.

 Further, permitting a hospital lien to attach to a wrongful death award would violate article 4675 of the Death Statute. TEX.REV.CIV.STAT.ANN. art. 4675 (Vernon 1952). Article 4675 specifically provides that damages recovered in a wrongful death action "shall not be liable for the debts of the deceased." An article 5506a hospital lien, however, attaches to an award in order to satisfy hospital bills, which are clearly the debts of the deceased. If article 5506a permitted a hospital lien to attach to a wrongful death award, the hospital would be using the award to pay debts of the deceased. Such a result would conflict with the plain intention of article 4675. We conclude that article 5506a does not allow a hospital lien to attach to a wrongful death damage award, and accordingly uphold the judgment of the trial court granting $4,000 to each of the Jones children for the wrongful death of their mother.

 We further hold that Greenspan has a valid attorney's lien on one-third of the $12,000 judgment, which entitled him to

receive $4,000. It is well settled that an attorney has a lien for attorney's fees on money collected by him for his client. *Thomson v. Findlater Hardware Co.,* 156 S.W. 301 (Tex.Civ.App.—Austin 1913, no writ). In the instant case, Greenspan entered into a valid contract with his clients which granted him an attorney's lien on one-third of any sums he received from either McEachern or State Farm. Since he received the $12,000 from State Farm, Greenspan is entitled to one-third of that amount.

We now turn to the issue of the disposition of the money which was not awarded to the children under the Death Statute. The Hospital District contends in all three of its points of error that the trial court erred in finding that Greenspan had an attorney's lien of $8,333.33 which is superior to an article 5506a hospital lien. The Hospital District argues that a duly perfected hospital lien must take priority over an unperfected attorney's lien. Greenspan asserts, however, that as a collecting lien, an attorney's lien must prevail over an article 5506a lien. He also claims in a counterpoint that there was no evidence to support the award of $4,666.67 to the Hospital District, and argues alternatively that if the $4,666.67 was in fact properly awarded, the Hospital District owes him attorney's fees for collecting that sum. We need not consider the claims of the parties concerning the money not awarded for wrongful death, however, because we hold that the district court was not the proper forum for disposition of these funds.

■■■ Since the Joneses brought suit under the Survival as well as the Death Statute, it was the responsibility of the trial court to consider any evidence which would support a recovery under either of these claims. The record reflects that the trial court reviewed the evidence concerning wrongful death and awarded $12,000 to the children as a result. The court erred in distributing the remainder of the funds, however, because it did so without regard to any recovery to which the Gardner estate would be entitled under the Survival Statute. Although the Joneses never presented any evidence which would allow recovery under the Survival Statute for consciousness of impending death, pain and suffering or funeral expenses, there was clear evidence to support a recovery under that statute for medical expenses. Before the trial, all parties stipulated that the Hospital District rendered $31,752.13 in reasonable and necessary medical services to Gardner. Since the evidence of medical expenses was undisputed and the Survival Statute allows the heirs and administrators to recover these expenses on behalf of the estate, *Landers, supra,* at 35, the trial court erred in not awarding the remaining $14,995 to the Gardner estate to help cover these expenses.

■■■ Since the $14,995 should have been awarded to Louella Gardner's estate, we conclude that the proper forum in which to decide the number and priority of claims against that sum is Tarrant County Probate Court No. 2, in which the proceedings regarding the administration of the Gardner estate are now pending. Section 5(c) of the Probate Code provides that in counties such as Tarrant, in which there are both district and statutory courts, the statutory probate court has exclusive jurisdiction over applications, petitions and motions regarding probate and administration. TEX.PROB. CODE ANN. § 5(c) (Vernon 1980); *Sumaruk v. Todd,* 560 S.W.2d 141 (Tex.Civ.App. —Tyler 1977, no writ). Section 5(d) further provides that "courts exercising original probate jurisdiction shall have the power to hear all matters incident to an estate." TEX.PROB.CODE ANN. § 5(d) (Vernon 1980). We hold that § 5 of the Probate Code requires the Hospital District, Attorney Greenspan, R.D. Ryno Imports, and any other creditors of the Gardner estate to have the validity, priority, and amount of their claims against the Gardner estate determined in probate court according to the laws of probate.

The portion of the trial court's judgment awarding $4,000 to each of the three Jones children under the Death Statute is affirmed, with the further instruction that Attorney Greenspan be granted one-third of that amount for attorney's fees. The remainder of the judgment is reversed. The trial judge is directed to transfer the amount of $14,995 to Tarrant County Probate Court No. 2, in which the proceedings regarding the Gardner estate are now pending in Cause No. 82–516–2. The Probate Court shall then distribute the money among the estate and its creditors according to the laws of probate.

It is so ordered.